King, J.
July 22, 1898, plaintiff commenced in the common pleas court of Wood county two actions, numbered respectively, 12006 and 12007. The object of the first of these was to marshal and foreclose certain judgment liens on real estate, alleged to belong to the defendant, Ephraim Shanabarger, and to have the said real estate sold, And the object of the second was to have certain conveyances of the lands which are the same as are described in the first action, and which were made by the defendant to his son, Henry A., declared fraudulent arid void as to creditors of Ephraim, and to have the lands in question administered for the benefit of the creditors. This latter case is not expressly, yet is in form and substance, an action under section 6344, Revised Statutes, save that no attempt was made to create a preference by publishing a notice to the creditors. These two actions, were before trial in the court of common^pleas, *139 consolidated under No. 12007, and then tried in. that court, and from the decree certain of the parties thereto appealed to this court and the case was here tried as consolidated. In both the cases several persons owning judgments against Ephraim were made defendants and answered in both cases, setting forth their respective judgments, and each made allegations in his answer and sought relief similar to that asked for by the plaintiff. The plaintiff and each of the creditor defendants gave notice of appeal, but only the plaintiff and the defendant Reed, Merry & Go., perfected an appeal to this court.
It is contended by the defendants, Ephraim and Henry A., that the case is not appealed as to the defendants not appealing. The action and relief afforded by sections 6344 and 6345, Revised Statutes, are for the benefit of all creditors, and it is not necessary, though it may be proper, that the creditors be made parties defendant, unless brought m to acquire a preference, One creditor may bring such an action for the benefit of all creditors, and if one so bringing the action is defeated, it is clear he may appeal, and that his appeal will be tried in the appellate court the same as in the court where brought, the relief granted being in both courts for the benefit of all creditors, and we see no reason why, if creditors are made parties, and especially if they have answered and asked for the same relief as is asked for in the petition, why such answering defendants may not appeal the cause. We think an appeal may be taken by a proper party, even”though it was not necessary that he be made a party, and that such appeal carries a case under these sections of the statute to the circuit court to be tried upon the issues and for the benefit of all creditors, so that either the plaintifiTor the appealing defendant Reed, Merry & Co., might appeal his cause, and so far as it seeks relief under the sections of the statute I have mentioned, it is an appeal ' for the benefit||of alljcreditors, whether they be parties in this action or“not.
*140 It is in the second place contended that the appellants, the- plaintiff and Reed, Merry &Co., are what is denominated in the law “subsequent creditors,” and that neither one could maintain an action under these sections, and that being so, neither one can appeal such action so begun to this court. The right to appeal does not depend upon whether the appellant has a valid cause of action which the proof will sustain. If in the petition or pleading he states a valid cause of action, then he may appeal from a judgment against him. And so we cannot determine that either the plaintiff or the defendant Reed, Merry & Co., could not appeal his case without determining whether either had a valid cause of action; in other words, whether the proof shows such a case as the court will consider under the provisions of tbe two sections of the statute I have cited. As these two actions were consolidated, it is not necessary now to determine whether, in an action to reach equities or to. foreclose liens and sell the defendant’s property, it would be necessary for lien-holders, or those who claimed rights in the property, to appeal in order to save those rights or liens, because, under the issues of the consolidated case, any proper party has a right to have the evidence heard and the questions determined, as well in the appellate court as in the court of original jurisdiction, regardless of whether he may be a subsequent creditor. This brings us to a determination of the questions in the case upon -the evidence.
I notice, first, the conveyances made October 16, 1897, direct to Henry. With reference to these the facts are: That, on October 16, 1897, Ephraim Shanabarger conveyed to his son, Henry A,, two tracts of land — -one, the undivided one-half of the west part of the northeast quarter of section 12, township 8 north, range 10, containing 100 acres; the other, tbe undivided three-fourths of the east part of the northeast quarter of section 12, township 3 north, range 10-east, containing sixty acres of land more or less.
*141 At the time of these conveyances there was drawn up and executed by Ephraim and his son Henry a written agreement, which provided that in consideration of $500, paid by Henry to Ephraim, that Ephraim had, on that day, sold and deeded to the said Henry certain lands, from which he reserved a right to the oil and gas therein for fifty years, further providing that the said Henry should furnish to Ephraim a good and suitable home and board, lodging, and the common necessaries of life, except clothing, during the term of his natural life. The deeds above referred to and the contract executed October 16, were drawn up b) one Louis Stransewfby, who was and is an attorney residing at Tiffin, Ohio. It is contended on the part of the defendants, Stanabarger, that at the time offthese conveyances a further contract was entered into, to the effect that as part consideration for such conveyances, Henry was to assume and pay certain debts, then owing by his father, which agreement it is claimed was oral. This contention is somewhat peculiar It is not incorporated in the written agreement, no memorandum in writing was made of it, and it is conceded that there did exist certain indebtedness at the time of the making of these conveyances in October. The parties holding the same were made parties defendant in this action, and one of them, at least, answered in the case, setting up a claim arising upon a judgment that had been recovered on May 9, 1898, against Ephraim, for $316. After that answer was filed, Henry paid off and satisfied that, as well as another similar claim. From the delay in attending to these debts, and from the fact that such agreement is not referred to in the written contract, we are led to doubt the truth of this contention. It is, in fact, immaterial in determining the character of the transaction itself, and that character, in our view, is that these conveyances were a mere gift on the part of a father to his son, with an agreement back for life support, Such a transfer would not be
*142 effectual, if made to defraud creditors; or if made with intent to defraud future creditors; but if, without actual intent toMefraud future creditors, the father retained property to pay Jais existing liabilities, then it would be a valid conveyance. To this point I cite Miller v. Wilson, 15 Ohio, 108, and extract from the opinion, on page 114:
“A man may make an advancement to his child, although at the time in debt, provided he has sufficient property remaining to satisfy such subsisting debts. And if the advancement is made under s«ch circumstances, it cannot be impeached by subsequent creditors, merely because it was voluntary. A person claiming under such advancement must be prepared, however, clearly and conclusively to show that there was other property sufficient to pay all subsisting debts, ”
And Creed v. Bank, 1 Ohio St., 1, from opinion on page 9:
“Indeed, there is no more objection against a man, if he is able to do it, giving away his property, than there is to his selling it. It is only where existing creditors - are injured by it, or where there is a fraudulent intent as to subsequent creditors, that a gift of property can be objected to. ’ ’
And in Crumbaugh v. Kugler, 2 Ohio St., 373, we read from the syllabus:
“Such a gift is never upheld unless property is retained, clearly and beyond doubt sufficient to pay all the donor’s debts. In the absence of any intentional fraud, however, such a conveyance, though void as to creditors who were such at the time of the gift, may be good as to subsequent creditors,”
Such being the law of this state, how then stand these conveyances as to existing creditors? Ephraim was indebted, at the time of the conveyances mentioned, less than $1,000, all of which Henry has since the commencement of this action paid and satisfied. At the time of the making of the conveyance of October 16th, Ephraim was the owner of other lands not included in those conveyances, namely *143 one tract of ten acres, another of forty-seven acres, and another, the undivided three-fourthB of eighty acres, making in all about one hundred and seventeen acres. The value of this is not shown distinctly in the proof, but using our own knowledge of ordinary land values, we may well say that this property retained was fairly and clearly worth four or five times as much as the amount of his indebtedness, and hence, he had an undoubted right to give these * lands t® his son, unless he at the time intended to defraud some future creditors, but of this there is absolutely no proof. The debts represented here are notes given several months after these transfers for mining stocks that turned out to be, what the sellers probably knew them to be when they induced this old man to buy them, absolutely worthless.
There is no evidence that when he made these two deeds he contemplated making any such investments. We hold, then, as to the two pieces above described, that he had the right to convey them, and the conveyances are valid as to all the world. At the same time that he conveyed these lands he transferred some personal property consisting of live stock and farming implements. The evidence does not show that it was worth more than two or three hundred dollars, and we find that such transfer was equally valid with the lands.
At this point I notice the contention made on the part of the creditors here, that if there were any debts owing at the time of these transfers, and the conveyance'was set aside »pon the petition of any such a creditor, it would inure to the benefit of subsequent as well as existing'creditors. This proposition is argued at great length with a good deal of care, but in our view of this case the proposition has little, if any, application to the facts here. There is no creditor in this case, and none disclosed by the proof to have been *144 an existing creditor at the time of the conveyances above described. Those conveyances were absolute and uncondional long before any of the debts were contracted that are involved in this case. I think it was ascertained in the court below that the debt of Hughes was prior to this conveyance, but the proof before us shows that the Hughes claim here is upon a judgment taken some time in the sum'mer of 1898, but upon notes that were dated February 8, 1898, and -they were part of a series of three notes made on that 'date and given for the first mining stock purchased by Ephraim. Now these conveyances took effect long before that date, and, as stated, show in connection with the facts, as we have found them, that Ephraim had a good right to-give away this particular property if he saw fit. There is no case cited in Ohio by creditor’s attorneys sustaining the-position which they advance, and they find some considerable difficulty in getting aroünd the doctrine as it is laid dowp in Webb, Admr., v. Roff et al., 9 Ohio St., 430, 434- and 435, and in Orumbaugh v. Kugler, supra, to the effect that if one conveys his property by gift, retaining sufficient, to pay his then indebtedness, such gift is valid, unless there be a secret trust or a proved intention to defraud creditors of .their debts thereafter to be incurred.
We come then next to certain other conveyances which-stand upon a different footing. At the date above named, October 16, 1897, Ephraim also deeded to Ida Stransewfky, the wife| of the lawyer who drew the deeds and who gave süchjpiegal advice as Ephraim received,, two other tracts of land, one|being the undivided three-fourths of eighty acres of land, and the other forty-seven acres of land. On January 22, 1898, Ida, at the request of Ephraim and her husband, executed conveyances to Henry of these two pieces of land which were left for record on February 22, 1898. If that^was!jall of this transaction, it would undoubtedly result in the^same conclusion as to its effect as we have arrived at *145 in the case of the other two tracts of land. For conceding that the conveyance was made originally in trust, that trust was executed, so far as the parties to it could execute, on January 22d, and that was prior to any of the indebtedness set forth in this action, and prior to any proof of any intention on the part of Ephraim to incur any such indebtedness. But it is not all. The proof is indistinct as to the intention of Ephraim with reference to this conveyance to Ida at the time it was made. He testifies that he made it in furtherance of the advice of his attorney that it was necessary to so make it, in order that he might defeat a possible claim of the Ohio Oil Oo. against him for damages in the sum of $50,000. We cannot go to the length of believing that story. It seems incredible that an attorney would have given any such advice, or that a man of the defendant’s understanding and intelligence, for he has both understanding and intelligence, would have believed it or acted upon it. There was no possible chance that the Ohio Oil Co. could sue him for damages in such sum, He had, previous to this, begun a suit for injunction against them to enjoin them from operating a certain piece of land under an oil and gas lease. He had given bond to pay all of the damages which should be sustained by reason of that injunction, if improperly issued, in the sum of $1,000. The action was after-wards settled or disposed of without any liability on his part. But there is other evidence in t.hejjcase which sheds some light upon the making.of these two conveyances. The attorney who drew these ‘testifies that Ephraim told him that he had children besides Henry, for some^of'whom he had not made any adequate provisipn”corresponding to the amount of his property. One[l?daughter,®at least, had received nothing, and that he desired these deeds to be made and held in trust for this daughter. £Thatj3afterwards he came over with Henry, and in Henry’s presence requested and directed that the deeds should^be madejo Henry, and *146 they were so made and the parties went away. A few days later they returned, and the old gentleman requested his attorney to draw up two mortgages upon these two tracts of land, upon the eighty acre piece for $3,000, and upon the forty-seven acre piece for $2,800. These mortgages to be made to the wife, Ida, again. • The mortgages were prepared, Henry and his wife were present; they offered no explanation or objection to the transaction, but executed the mortgages when they were drawn up, and the mortgages were left with the attorney to be placed upon record, and kept by him until called for by Ephraim. These mortgages remained in the possession of the attorney except when they were at the recorder’s office until some time after this action was begun, when either Ephraim or Henry, and the proof is in dispute as to which one, but we think it was Ephraim, called at the attorney’s office, asked for and received these mortgages, and took them away with him without any cancellation thereof; they stand yet on the records uncancelled. We think this evidence shows conclusively that Ephraim did not intend that his son Henry should have this property — that there was at the time a secret understanding between them — 'by that I mean an understanding which the proof has distinctly divulged, to the effect that Henry was to make such disposition of these lands as his father should thereafter request or direct. That both of the parties so understood it, and when requested to execute mortgages, he did.as requested. No consideration passed for the making of the mortgages, and no consideration passed for the making of the deeds of conveyance; both were absolutely without consideration, and they so remained to the present time. The mortgages have not been disposed of, nor has the title to the land, the equitable title of which is in Ephraim Shanabarger, and the possession and dominion over the mortgages is still in him. This bring* ns clearly within the principle of law well recognized in tW *147 cases which have been before cited, and I refer particularly to Webb, Admr., v. Roff, supra, and the authorities there cited. The court there say, on page 435:
“If one possessed of property and of good credit should make a voluntary conveyance of his property with a view to becoming subsequently indebted, and should by means of his former reputation contract debts shortly after the'conveyance of his property, the creditors being ignorant of the fact, fraud might well be regarded as directed specifically against such subsequent creditors. To the last mentioned class of cases, as including subsequent creditors, should doubtless be added those voluntary and colorable conveyances made and held under such circumstances as are attended in law by the presumption of secret trust for the grantor, and constituting a continuing fraud.”
And the court cite with approval a case also cited in the brief of attorneys for Shanabarger, and say this about it:
“Thus it is laid down in the case of Clark v, French, 23 Me., 221, that if a deed intended to be absolute be made without reservation of any secret trust for the benefit of the grantor, although with.a fraudulent intent understood by both parties to place the property beyond the reach of creditors, although made for a valuable consideration, yet wanting the ingredient of good faith, it shall be avoided only by creditors existing at the time of the execution of the deed. But if the deed were not absolute in fact, though in form it might be so, if a secret trust and confidence exist for the benefit of the grantor, it should be held void against subsequent as well as precedent creditors.”
The court, in 19 N. Y,, 147-8, say:
“The debtor must devote all his property to payment of his debts; reserve no control to himelf; provide for no benefit to himself other than what may result from the payment of his debts.”
These authorities accurately fit our case. We cannot overlook the facts here, which irresistibly show there was a secret trust, for these facts are of such a character that the law will presume the existence of a secret trust for the *148 grantor; and constituting continuing fraud, And that kind of a conveyance is void as to the creditors who”may be called subsequent creditors, but who are really existing creditors, because they are creditors whose debts were contracted during the continuance of the trust. Had the grantor who reserved this trust to himself, confirmed and executed it by giving the property to whomsoever he designed it for, before any debts were contracted, it would then fall within the principle applicable to the first two conveyances. But in this case he did not cause the trust to be executed, It stands now in the same condition that it did when created, and, therefore, these creditors are existing creditors as to that property, and are entitled to have it subjected to the payment of their claims. At the time of the making of these deeds in October, the grantor still had title to another tract of ten acres, upon which at the same time, and without consideration, he executed a mortgage for $400, to the wife of this attorney, and that still remains uncancelled. It is of no validity, and the decree entered in this case will'declare its cancellation. The decree will further declare the cancellation of the two mortgages mentioned, the setting aside of the several conveyances relating to said two tracts of land, and the whole, that is the eighty acres, forty-seven acres and ten acres, will be administered in the probate court of this county for the benefit of creditors; and from the funds so arising, the costs of this action will be paid, including a counsel fee to the attorneys, and a trustee will be appointed to bring the property to sale or administer the trust, pay. the debts, and pay the balance remaining in his hands, if any, to Ephraim Shanabarger. We do^not find that Ephraim Shanabarger had any intention^ to defraud these or any other creditors of his at the time¡;’|when he made these conveyances. We simply find that in¡law helbad not conveyed away his equities in this property, and these equities the creditors are entitled to have subjected tojlhe *149 payment of his debts, including all the debts that exist at the time of the making of this decree.
James & Beverstock and Baldwin & Harrington, for creditors.
Seney & Johnson, for Shanabargers.